**UNITED STATES of America,**

v.

**Nelson MARQUEZ, Defendant**

**Cr. A. No. 00–40011–NMG.**

United States District Court,
D. Massachusetts.

Sept. 7, 2000.

Herbert F. Travers, III, Travers, Murphy & O'Connor, Worcester, MA, for defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Defendant, Nelson Marquez ("Marquez"), seeks review of an order of detention pending trial issued by Magistrate Judge Charles B. Swartwood III (Docket No. 61). The Court treats defendant's motion as a motion to revoke or amend the detention order and, after review, denies the motion.

### I. Background

The following facts are taken from the Order of Magistrate Judge Swartwood entered on June 2, 2000. Marquez does not present a different view of the facts in his memorandum of law and therefore, for the purposes of this Memorandum and Order, those facts presented by the Magistrate Judge are adopted by this Court.

Marquez was part of a conspiracy to distribute heroin in Southbridge, Massachusetts. Eddie Santiago ("Santiago") was arrested on March 24, 2000 and charged with possession with intent to distribute and distribution of heroin. Following Santiago's arrest, he agreed to cooperate with the DEA in its continuing investigation in connection with the distribution of heroin in the Southbridge area.

Santiago identified his source of heroin as being an individual who resided in Leominster and known to him by the nickname "Caoba". That individual was later identified in Court by Special Agent Bull as being co-defendant, Reinard Devarie. Santiago told DEA agents that for the past three and one-half months, Devarie had supplied him with approximately 100 to 150 bundles of heroin on a weekly basis. Santiago's arrangement with Devarie was that the heroin would be delivered on credit and that Santiago would pay Devarie as the heroin was sold.

Santiago told agents that Marquez was Devarie's worker. Marquez was present with Devarie when they were videotaped at a meeting in Southbridge with Santiago prior to Santiago's arrest and when Devarie first met with an undercover agent ("the UCA") in this case. It was obvious from the videotape and the testimony of Special Agent Bull, who surveilled the meeting between Devarie and the UCA on March 30, 2000, that Marquez acted as protection for Devarie and conducted counter-surveillance when Devarie met with Santiago and the UCA.

On March 30, 2000, Santiago called Devarie and informed him that he had picked up some heroin and that a worker was selling heroin to pay Devarie and to raise bail money. Santiago then asked Devarie if he could give Devarie's telephone number to his worker (who was a UCA). Devarie said no but told Santiago to give him the worker's number and Devarie would contact him. Santiago did as directed and within minutes the UCA received three pages from the telephone at Devarie's apartment.

The UCA and Devarie made arrangements to meet at Ernie's Car Wash on Route 146, in Worcester. Special Agent Bull and other law enforcement agents maintained surveillance of Ernie's Car Wash and while at that location, saw an automobile registered to Devarie with the name "Caoba" in large red letters across the rear windshield arrive at Ernie's Car Wash. Devarie was in the driver's seat and when the vehicle stopped, Marquez began to conduct counter-surveillance. The UCA then met with Devarie. Initially, Devarie wanted the UCA to redeliver the heroin to Marquez, but later retracted those instructions when the UCA told Devarie that he had already sold some heroin and that he was prepared to give Devarie $2,000 from those sales. Devarie then instructed the UCA to walk with him to another location where he told the UCA that he was the "boss", that the heroin was his property and directed the UCA to deliver some of the heroin to a co-defendant named in this Complaint.

When Mr. Marquez was arrested on April 5, 2000, he had in his possession a piece of paper with Mr. Santiago's telephone number printed on it.

## II. Discussion

■ When a district court reviews the findings of a magistrate judge with respect to pretrial detention, it must engage in *de novo* review of the contested order. *United States v. Tortora*, 922 F.2d 880, 883 n. 4 (1st Cir.1990). In doing so, the Court may reject the magistrate judge's fact finding and start the hearing process anew or may accept that fact finding and hear additional facts and argument. *Id.*

■ Under 18 U.S.C. § 3142(e), a judicial officer may detain a person pending trial:

> If, after a hearing pursuant to [§ 3142(f)], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. . . .

To detain a defendant under such circumstances, the government must demonstrate that the defendant poses a danger to the community by clear and convincing evidence and/or that the defendant poses a risk of flight by a preponderance of the evidence. 18 U.S.C. § 3142(e)-(f). Because probable cause has been found in this case and the offense charged is punishable under the Controlled Substances Act by a penalty of 10 years or more, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. § 3142(e). The defendant bears the burden of production to rebut that presumption.

## A. *Danger to the Community*

Marquez argues that he is not a danger to the community because there is no evidence that, although he was present at certain drug transactions, he actually participated in them. To the contrary, the record shows that Marquez 1) attended meetings with Devarie where heroin transactions occurred, 2) was designated by Devarie to take delivery of a great deal of heroin from the UCA and 3) had in his possession at the time of arrest Santiago's telephone number. Even without the testimony of Santiago, which Marquez challenges is unreliable, this Court concludes that, based upon that record, Marquez was not indifferent to the drug transactions around him.

Given the presumption against the defendant under 18 U.S.C. § 3142(e) and the evidence of Marquez's participation in the alleged drug conspiracy, the Court concludes that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community.

## B. *Risk of Flight*

Marquez argues that he is not a risk of flight because, although he was born in Puerto Rico, he has maintained a residence in this community and has emotional ties here. He also argues that, if he were to flee to Puerto Rico, he would lose his disability benefits from the Social Security Administration because such benefits are not transferable to Puerto Rico.

To the contrary, Marquez does pose a risk of flight for several reasons. First, he has an extremely strong incentive to flee based upon the length of the prison term he faces in connection with the charges pending against him and the likelihood of his conviction. The government has recorded Marquez on two video tapes participating as a lookout and "right hand man" to Devarie during drug transactions. Moreover, although Marquez challenges Santiago as an unreliable witness, Santiago is expected to testify that Marquez delivered more than 100 grams of heroin to him.

Second, as the Magistrate Judge noted, Marquez lacks substantial ties with this district but maintains significant ties outside of it. Marquez was born in Puerto Rico and lived there for 22 years. His grandmother who raised him, his aunt to whom he is close, his ex-wife and his two children all reside there. By contrast, Marquez's ties to this district are limited to a girlfriend with whom he has lived for two years, Margarita Flores.

With respect to Marquez's argument that he would lose income if he fled to Puerto Rico, it is unclear whether Marquez will still receive such disability benefits if he is convicted. As a consequence, his incentive to remain here is tenuous because disability payments may be jeopardized whether or not he stays in the area.

Finally, there is reason to question the suitability of Marquez's proposed third party custodian, Ms. Flores. She is the registered owner of the vehicle that Marquez drove to one of the meetings that the government video tape recorded. Assuming that Ms. Flores is not involved in the alleged drug conspiracy, the record indicates that Marquez is able to conceal illegal activity from her. Thus, there is reason to doubt her ability to monitor Marquez's activities and report any noncompliance with bail conditions that this Court might impose were he released.

Given the above facts, this Court concludes that Marquez poses an unacceptable risk of flight which cannot be reasonably addressed with any condition or combination of conditions of release.

## ORDER

For the foregoing reasons, defendant's motion to review the Magistrate Judge's detention order (Docket No. 61) is hereby DENIED.

So ordered.